IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN M. ASPEN,                          :       CIVIL ACTION
                                        :       No. 13-6057
          Plaintiff,                    :
                                        :
     v.                                 :
                                        :
WILHELMSEN SHIPS SERVICE,               :
                                        :
          Defendant.                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                March 9, 2015

          Plaintiff John Aspen brings this action under the

Americans with Disabilities Act ("ADA"), alleging that Defendant

Wilhelmsen Ships Service--his former employer--discriminated

against him on the basis of a disability incurred at the

workplace, and that it failed to provide him with a reasonable

accommodation. Defendant has moved for summary judgment. For the

reasons that follow, the Court will deny the motion.


I.    **BACKGROUND**[1]

          Defendant Wilhelmsen is a worldwide maritime services

company that provides services to merchant vessels at roughly

2,400 ports in 125 countries. Compl. ¶ 4. Plaintiff John Aspen

---

[1]          In accordance with the appropriate standard of review
for motions for summary judgment, the Court views the facts in
the light most favorable to the non-moving party--the Plaintiff.

is an individual who was employed by Defendant as a "ship's agent" from November 2005 until November 16, 2012. Id. ¶¶ 5-6. While in Defendant's employ, Plaintiff worked at the company's Folcroft office and serviced vessels at ports in Philadelphia, Baltimore, Camden, and Wilmington. Id. ¶ 6. Around seventy-five percent of Plaintiff's duties were sedentary office tasks, with the remaining twenty-five percent involving traveling to and boarding vessels serviced by Defendant. Id. ¶ 7. Specifically, Plaintiff's position often required him to travel to various ports of call, ascend gangways and ladders, walk a few hundred yards from the terminal to the ship, and carry heavy bags and boxes onto the ship. Plaintiff's Statement of Material Facts ¶ 6, ECF No. 29 [hereinafter "Pl.'s SMF"].

In early 2012, Defendant began to require the presence of a ship's agent in Baltimore upon the arrival and departure of certain foreign customers' ships. Id. ¶ 7. The responsibility of traveling to the Baltimore port was split among three employees at Defendant's Folcroft Facility: (1) Y.S. Lee, as a ship's agent; (2) Plaintiff, as a manager, ship's agency; and (3) Steve Nutter, as branch manager. Defendant's Statement of Material Facts ¶ 8, ECF No. 28 [hereinafter "Def.'s SMF"]. This assignment was "particularly burdensome because it would require the employee to drive an hour and a half to the port at odd hours of the night because of the uncertain timing" of the

ships' landings. Id. ¶ 9. Some time prior to Plaintiff's accident, Plaintiff and some of the other employees discussed the possibility of one of them transferring to Baltimore and operating primarily out of that port--but their families, homeownership, and the fact that Defendant would not fund relocation made that prospect unappealing to the employees. Id. ¶ 10; Pl.'s SMF ¶ 10.

On or about September 9, 2012, Plaintiff was injured in the course of his employment, sustaining "crushing injuries to his left foot which resulted in the amputation of all five toes and a portion of the foot itself." Compl. ¶ 8. The injury occurred when the ramp on one of the ships Plaintiff was servicing fell on his foot as he was trying to hand off a box to a crew member on the ship. Def.'s SMF ¶ 12. Plaintiff was immediately placed on medical leave and began receiving workers' compensation benefits on September 10, 2012. Compl. ¶ 9. On October 17, 2012, Plaintiff was informed that his medical leave would expire on November 13, 2012. Def.'s SMF ¶ 15. As of November 13, 2012, Plaintiff was not cleared to return to work by his doctor, nor did he know when he would be cleared to return to his position. Id. ¶ 16.

Plaintiff avers that, pursuant to Defendant's workers' compensation program, he was entitled to be retained as an

employee on an extended leave of absence until one of the
following events took place:

- He was released by his doctor for full or partial duty;

- It became a business necessity to replace him;

- The company received satisfactory medical evidence that
  he would be unable to return to work; or

- He resigned or actually or constructively informed the
  company that he did not intend to return.

Compl. ¶ 11. On November 16, 2012, Plaintiff received a letter
from Wilhelmsen indicating that his position had been eliminated
due to business necessity. Pl.'s SMF ¶ 17. Defendant asserts
that it eliminated Plaintiff's position so that it could afford
to hire a ship's agent who could better service the Baltimore
area and, among other things, relieve the strain placed on the
understaffed Folcroft Facility while Plaintiff was out on
medical leave. Def.'s SMF 18; Def.'s Mem. Law Ex. E, Nguyen Dep.
80:12-82:24. Although the decision to hire a new employee in
Baltimore was not made until after Plaintiff's termination,
discussions of eliminating Plaintiff's position and creating a
new one in Baltimore occurred before his termination. Pl.'s SMF
18; Pl.'s Mem. Law Ex. G., Casenza Dep. 39:11-40:11, 43:7-45:6.

        At no time during his employment with Defendant did
Plaintiff ever specifically request an accommodation related to
his disability--although Plaintiff avers that he did not believe
he was required to request a further leave of absence under the

4

policies provided in the handbook (i.e., none of the four above-mentioned "events" had occurred). Def.'s SMF ¶ 19; Pl.'s SMF ¶ 19. Rather, Plaintiff's first request for an accommodation was sent by his attorneys on November 28, 2012, twelve days after his termination. Pl.'s SMF ¶ 20. Specifically, Plaintiff requested an eight-week extension of his medical leave and a conference with a Wilhelmsen representative to discuss any further accommodations that he might need. Id. ¶ 21. On December 11, 2012, Plaintiff sent a second letter requesting an accommodation, and Defendant denied both requests on December 14, 2012. Compl. ¶¶ 14-15.

As of November 27, 2012, Plaintiff's treating physician, Dr. Millili, had not cleared him to return to work. Def.'s SMF ¶ 22. In fact, Plaintiff was not cleared to begin physical therapy until February 12, 2013. Id. ¶ 23. It was not until March 20, 2013, that Plaintiff was found able to return to work. Id. ¶ 24. Nonetheless, Plaintiff testified on May 7, 2013, that, as of that date, he was not physically able to return to work in his full capacity:

> Q: Sitting here today, do you believe that you're physically able to go back to work as a boarding agent for Wilhelmsen?
>
> A: Not in full capacity, no.
>
> Q: What do you think you would not be able to do?
>
> A: Well, it's a lot of walking. These ships, from the time you walk--park that car, walk through the ship,

up to the elevator, it's a lot of walking. I don't
believe I'd be able to do that. I don't think I can
climb pilot ladders or gangways the way I used to. I
mean, you really need your balance, and I'm really not
comfortable with doing that. I would be perfectly fine
as an in-house operation guy, and that would be great
if there was a position to go back to.

Q: So, what part of your job as a boarding agent
causes you concern with regard to your current ability
to do the job?

A: Just the physical requirements. . . . I'm not
comfortable walking more than maybe twenty minutes,
I'm not comfortable climbing at all. . . . [a] lot of
times you're carrying boxes and that extra weight is
hard on the foot. . . . I physically am unable to
climb a pilot ladder.

Def.'s Mem. Law Ex. B, Aspen Dep. 163:2-164:17.


## II.  PROCEDURAL HISTORY

On January 14, 2013, Plaintiff filed a discrimination
charge with the Equal Employment Opportunity Commission ("EEOC"),
and was issued a "right to sue" letter on September 3, 2013.
Compl. ¶¶ 16-17. On October 17, 2013, Plaintiff commenced this
action in federal court, asserting one count of employment
discrimination (Count I) and one count of failure to provide
reasonable accommodations (Count II), both brought under the
ADA. Id. ¶¶ 18-36. On July 9, 2014, Defendant filed a motion for
summary judgment. ECF No. 28. Plaintiff filed a response on July
24, 2014 (ECF No. 29), to which Defendant filed a reply[2] on July

---

[2]      Technically, Plaintiff filed a motion for leave to
file a reply brief, which the Court will grant. ECF No. 30.

31, 2014 (ECF No. 30). The motion for summary judgment is now ripe for disposition.

**III. LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation; a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who

7

must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## IV.  DISCUSSION

Defendant's motion for summary judgment asserts that Plaintiff has failed to raise a genuine issue of material fact for either of his claims. Each claim will be considered in turn.

### A.  Count I--Disability Discrimination

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a prima facie case of disability discrimination under the ADA, a plaintiff "must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability. Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006) (citations omitted).

Once a plaintiff has made out a prima facie case of discrimination, the "burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action." Connors v. Chrysler Fin. Corp., 160 F.3d

971, 974 n.2 (3d Cir. 1998) (referring to the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If the defendant states such a reason, then the plaintiff must show, by a preponderance of the evidence, that the defendant's explanation is actually a pretext for discrimination. Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 271 (3d Cir. 2010). It is also important to note that throughout this burden-shifting process, "the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)) (internal quotation marks omitted).

To establish that an employer's rationale is a pretext for discrimination, a plaintiff must provide sufficient evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes, 32 F.3d at 764).

1.   Prima Facie Case

With regard to the first prong of the prima facie inquiry, Defendant does not contest that Plaintiff has a disability; as to the third prong, Defendant does not dispute

9

that Plaintiff suffered an adverse employment action because of that disability.[3] Instead, Defendant asserts that Plaintiff cannot establish a prima facie claim of discrimination because he was not a "qualified individual" under the ADA.

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This inquiry can be divided into two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." Turner, 440 F.3d at 611. "Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Defendant does not dispute that Plaintiff possessed the "requisite skill, experience, education and other job-

---

[3]     Although Defendant does not focus on this third prong of the inquiry, Defendant does assert that it had a legitimate, nondiscriminatory rationale for Plaintiff's termination--as will be further explored below.

10

related requirements of the position." Nevertheless, Defendant argues that Plaintiff was not a "qualified individual," for two reasons: (1) Plaintiff was not able to come in to work at all for an essentially indefinite time; and (2) even had Plaintiff returned to work, he still would have been physically incapable of performing essential functions of his position, with or without accommodation. The Court will address each point in turn.

### a.   Plaintiff's Request for Leave

Defendant alleges that after his accident and at the time of his termination, Plaintiff was unable to perform the essential functions of his job with or without a reasonable accommodation because Plaintiff was unable to return to work for essentially an indefinite period of time. Plaintiff, however, asserts that "a request for a leave of absence may be a reasonable accommodation," and contends that he did not ask for an indefinite period of leave. Pl.'s Resp. 4. A critical threshold issue before the Court is, therefore, whether Plaintiff's request for leave constituted a finite request for a reasonable accommodation, or whether it was a request for an unreasonably indefinite period of leave.

At the time of Plaintiff's termination, his doctor had not released him to return to work. See Def.'s SMF ¶ 22. Because Plaintiff could not return to work, Defendant reasons, Plaintiff

could not perform the essential functions of his position. In support, Defendant cites Tumbler v. American Trading & Production Corp., which stated that "attendance is a prerequisite to job qualification under the ADA. No. 96-8566, 1997 WL 230819, at *2 (E.D. Pa. May 1, 1997). If a plaintiff cannot attend work, he cannot perform the essential functions of his employment." In Tumbler, an employee suffering from major depression had been on a leave of absence for ten months, and then failed to follow the employer's policies with respect to requesting an extension to the leave of absence. Id. at *1-2. Importantly in Tumbler, however, there was no evidence that the employee's requested leave of absence would be for a finite period of time. Id.

Cases like Tumbler indicate that "an indefinite and open-ended" leave of absence "does not constitute a reasonable accommodation," Fogleman v. Greater Hazleton Health Alliance, 122 F. App'x 581, 586 (3d Cir. 2004). However, the Third Circuit has suggested that, in some circumstances, a finite period of medical leave may represent a reasonable accommodation, if the leave "would enable the employee to perform his essential job functions in the near future." Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) (emphasis added); see also id. (noting that federal courts "have permitted a leave of absence as a reasonable accommodation under the ADA"); Walton

12

v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 671 (3d Cir. 1999) (stating that "unpaid leave supplementing regular sick and personal days might . . . represent a reasonable accommodation" in some cases).

Based on that reasoning, courts in this circuit have found plaintiffs to be "qualified" within the meaning of the ADA when the requested accommodation is a finite period of unpaid medical leave. See Bernhard v. Brown & Brown of Lehigh Valley, Inc., 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010) ("It would be entirely against the import of the ADA if [the plaintiff] were not considered qualified because he was not able to perform his essential job functions during his leave, as leave itself was the accommodation requested by [the plaintiff]."); Gibson v. Lafayette Manor, Inc., No. 05-1082, 2007 WL 951473, at *7 (E.D. Pa. Mar. 27, 2007) ("[T]he fact that [the plaintiff] could not return to work in any capacity at the expiration of her [Family and Medical Leave Act ("FMLA")] leave is not dispositive of whether she is a 'qualified individual,'" because additional leave time "is a form of reasonable accommodation.").

Leaving aside issues of timeliness for the moment, Plaintiff submitted a request for an eight-week extension of his medical leave on November 28, 2012. Defendant reasons that because Plaintiff did not know, at that point, if or when he would be medically cleared to return to work, this eight-week

request was essentially a request for indefinite leave. An examination of what was actually communicated between Plaintiff and Defendant's management, however, reflects otherwise.

An email from Paige Nguyen--an employee involved in the decision to terminate Plaintiff--to her superior Steve Casenza and to Colleen Martin is particularly revealing. Referring to Plaintiff's condition as of November 13, 2012, Nguyen wrote "[b]ased on below, John has not been released to work. Reassessment in 2 weeks. Possible return with restrictions after wound closure (about 2 weeks) but this is uncertain." Pl.'s Mem. Law Ex. E, Nguyen Email. Below this message is the report of Plaintiff's treatment referenced in Nguyen's statement--a passage indicating that Dr. Millili was considering Plaintiff's release back to work, but instead elected to delay his release out of concern with him returning to work with an open wound. Id. Dr. Millili determined to address the possibility of work release again in the follow-up appointment that was scheduled for November 27, 2012. Id.

From these emails--which were nested within the email thread that ended with the November 15, 2012, message that suggested terminating Plaintiff--it is evident that Defendant had a notion that Plaintiff's leave would not be indefinite. For all Nguyen and Casenza knew at that point, if Plaintiff's wound (which had been inflicted months earlier) finished healing well

14

and quickly, there was a significant possibility that Dr. Millili would clear Plaintiff to return to work within a few weeks--albeit with restrictions. Moreover, when Plaintiff did submit a request for an extension of medical leave, it was for a period of eight weeks. These circumstances simply do not bespeak indefinite leave.

Defendant disregards these indications of the finite nature of Plaintiff's request for leave, and instead points out that Plaintiff still was not cleared to return to work at his November 27, 2012, appointment--and that he did not receive clearance to work until the spring of 2013. According to Defendant, this shows that Plaintiff's request was for indefinite leave, since neither Plaintiff nor Defendant knew how long it would take for Plaintiff to recover and complete recuperative physical therapy. These ex post arguments, however, are immaterial and unavailing.

The crucial question here is not how long it actually took Plaintiff to recover, but what Defendant knew and expected of Plaintiff's condition ex ante--at the time of the decision to terminate him without accommodation. As this Court stated previously, "[w]hat is relevant for this analysis is whether Plaintiff was a qualified individual within the meaning of the ADA at the time of his termination." Jacoby v. Bethlehem Suburban Motor Sales, 820 F. Supp. 2d 609, 621-22 (E.D. Pa.

2011) (Robreno, J.) (emphasis added). At that time, Defendant
had reason to believe that Plaintiff might be cleared to return
to work within a matter of weeks. This means that a reasonable
accommodation may have been provided Plaintiff, in the form of a
finite extension of medical leave. Precisely how Plaintiff's
recovery actually played out is simply irrelevant.

        b.   <u>Essential Functions of Plaintiff's Position</u>

        Given that a finite period of medical leave may have
been a viable reasonable accommodation, it follows that there is
a reasonable likelihood that, with such an extension, Plaintiff
would have been able to return and performed the essential
function of <u>attending</u> his work. This does not necessarily mean,
however, that merely by coming to work, Plaintiff would be
capable of performing all of the essential functions of his
position as ship's agent.

        Defendant argues that Plaintiff was incapable of
performing the essential physical functions of his position,
such as traveling to ports of call, walking from terminals to
ships, ascending gangways and ladders, and carrying heavy bags
and boxes onto ships. According to Defendant, even if Plaintiff
returned to work within a matter of weeks, he had no reasonable
expectation of when--if ever--he would be able to perform those
actions. Defendant concludes that because Plaintiff was unable

16

to perform these duties with or without accommodation at the
time of his termination, he was not a "qualified individual."

Essential functions of a position are "fundamental job
duties," as opposed to "marginal functions." 29 C.F.R.
§ 1630.2(n)(1); see also Supinski v. United Parcel Serv., Inc.,
413 F. App'x 536, 540 (3d Cir. 2011). A job function may be
considered essential for a number of reasons: because (1) "the
reason the position exists is to perform that function";
(2) only a limited number of employees are available "among whom
the performance of that job function can be distributed"; or
(3) the function is "highly specialized so that the incumbent in
the position is hired for his or her expertise or ability to
perform the particular function." 29 C.F.R. § 1630.2(n)(2); see
also Supinski, 413 F. App'x at 540. Although plaintiff must make
a prima facie showing that he is a qualified individual, "the
employer has the burden of showing a particular job function is
an essential function of the job." Supinski, 413 F. App'x at 540
(citations omitted).

Here, Defendant offers mostly blanket assertions that
Plaintiff could not perform the essential functions of the
position, and fails to identify precisely which functions it
alleges are essential or why. Defendant merely infers that
walking for long distances and climbing ladders are "essential
functions" of Plaintiff's job. Defendant submits a Functional

17

Description for the position of manager, ship's agency, Def.'s
Mem. Law Ex. D, but Plaintiff disputes that this job description
was ever in effect, Pl.'s Mem. Law Ex. B, Aspen Dep. 75:13-76:6.

Plaintiff asserts that, with reasonable accommodation
for his physical limitations, he would have been able to perform
the essential functions of his position (again, once he had
returned from his finite period of extended medical leave).
Defendant has not shown that physical activities such as walking
long distances and climbing ladders--which made up perhaps
twenty-five percent of his work activities, see Compl. ¶ 7--are
essential functions. As a ship's agent, Plaintiff coordinated
with ship captains and boarded ships. Some vessels, however,
allowed ship's agents to drive directly to shipside, which would
prevent an employee from having to walk great distances. See
Pl.'s SMF ¶ 6. Moreover, Plaintiff asserts that not all vessels
are equipped with ladders, and that he would not have these
issues on smaller vessels. See id. ¶ 27. Thus, Plaintiff's
limitations would not necessarily have affected his duties with
all of Defendant's clients in the same way.

Defendant's prior accommodations to Plaintiff are
particularly significant. In November 2006, Plaintiff had his
license suspended for six or seven months and, accordingly,
Defendant assigned him to inside operational duties and limited
his access to boarding vessels. See id. ¶ 33. Even with these

18

restrictions, Nguyen still testified that his essential functions remained the same. Pl.'s Mem. Law Ex. C, Nguyen Dep. 99:9-10. These past accommodations to Plaintiff's prior physical limitations indicate that Defendant could have reasonably offered similar accommodations following Plaintiff's accident. Ultimately, taking all factual inferences in the light most favorable to the Plaintiff, the Court finds that Plaintiff has carried his burden of showing that, with reasonable accommodation, he could have performed the essential functions of his position.

* * *

With regard to Plaintiff's prima facie showing, Defendant has only specifically contested whether or not Plaintiff was a "qualified individual" at the time of his termination.[4] Because Plaintiff has sufficiently shown that he was a "qualified individual," the Court finds that Plaintiff has satisfied his prima facie burden as to his discrimination claim.

### 2.   Legitimate, Nondiscriminatory Rationale

Having made out a prima facie case of discrimination, Plaintiff may rely on the McDonnell Douglas burden-shifting paradigm to require Defendant to provide a legitimate, nondiscriminatory reason for Plaintiff's termination. According

---

[4]        Thus far in the proceedings, Defendant has not disputed the other two elements.

to Defendant, "the undisputed, legitimate, proffered business reasons for terminating Mr. Aspen's employment were based on Defendant's need to better service a major client," given that "one of Defendant's major customers utilizes Baltimore, Maryland, as its port of call, [and] the costs and employee burdens of supporting that client were dramatically decreased by placing a Ship[']s Agent in Baltimore" Def.'s Mem. Law 10. Given Defendant's light burden, this rationale passes muster, and it falls to Plaintiff to show that Defendant's proffered reason is pretextual.

### 3. Evidence of Pretext

Plaintiff contends that the rosy rationale painted by Defendant is merely a flaking veneer that fails to obscure the discriminatory animus beneath. In support, Plaintiff points to an email from Colleen Martin to Nguyen and Casenza that is, again, revealing. The text reads as follows:

> My suggestion is to discuss with our lawyer.
>
> FMLA has been exhausted and we have followed our policy in the past that employees that must remain away for more than [sic] period allowed for medical or disability leave will be terminated.
>
> John has not been released yet and even though it is anticipated he will eventually be able to return it is not definite and there will be restrictions.
>
> Possibly we need to advise him that we will be terminating him, once he is able to return and there is an open position that he is qualified for then he is welcome to apply?

20

> However if this situation follows [sic] under ADA because of his disability then do we need to go through accommodation process?
>
> We need to advise John one way or the other.

Pl.'s Mem. Law Ex. E, Martin Email. This email was sent the day before Plaintiff was terminated. Nowhere does it mention anything related to Defendant's claim of business necessity, nor does it refer to the need to better service Baltimore. Regardless of Defendant's business needs, this message seems to indicate that Plaintiff would have suffered the very same fate even if Defendant did not have any clients to worry about in Baltimore. It is suspect that Defendant's management would ponder the issues raised by Martin if it had already decided to replace Plaintiff for reasons of business necessity. Moreover, Casenza admitted that the decision to locate a ship's agent in Baltimore was not made until after Plaintiff's FMLA leave expired. Id. Ex. G, Casenza Dep. 39:11-40:11.

That is not to say that those business considerations did not enter into Defendant's decision-making process. But this is certainly sufficient evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 764).

21

Because Plaintiff has offered sufficient evidence showing that Defendant's rationale for his termination was pretextual, the Court will deny Defendant's motion for summary judgment as to Count I.

B.   Count II--Failure to Accommodate

A plaintiff may also seek recovery under the ADA with a failure-to-accommodate claim, which provides a remedy when an employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

The regulations accompanying the ADA provide that, to determine the appropriate accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of the accommodation" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). Based on that regulation and on the EEOC's interpretive guidelines, the Third Circuit has concluded that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good

faith." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999) (quoting Mengine v. Runyon, 114 F.3d 415, 419-20 (3d Cir. 1997)) (internal quotation marks omitted).

In Taylor, the Third Circuit discussed the nature of the employee's and the employer's duties prior to and during the "interactive process" of identifying a reasonable accommodation. Id. at 312-13. With regard to the employee's duties, the Court concluded that the employee has a duty to put the employer on notice that the employee "wants assistance for his or her disability." Id. at 313. The Court explained that

> [w]hat matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.

Id. The court further emphasized that an employee need not have "specifically invoked the ADA or used the words 'reasonable accommodation' when he requested accommodations." Id. at 314.

If this sufficient notice requirement is satisfied, then the interactive process requirement is triggered, and the burden is placed on the employer "to request additional information that the employer believes it needs" to identify a reasonable accommodation or to establish that no accommodation is possible. Id. at 315. Of this process, the Taylor Court stated that

> [t]he interactive process does not dictate that any
> particular concession must be made by the employer;
> nor does the process remove the employee's burden of
> showing that a particular accommodation rejected by
> the employer would have made the employee qualified to
> perform the job's essential functions. All the
> interactive process requires is that employers make a
> good-faith effort to seek accommodations.

Id. at 317 (citation omitted).

Defendant says that Plaintiff has not stated a failure-to-accommodate claim because he did not request an accommodation until after his employment was terminated. Def.'s Mem. Law 6. Since the relevant time for this inquiry is the time of termination, see Jacoby, 820 F. Supp. 2d at 621-22, and since Plaintiff failed to request a reasonable accommodation until twelve days after he was fired, Defendant argues that it was under no obligation to provide Plaintiff with a reasonable accommodation. Even if Plaintiff's belated request is disregarded, however, that does not necessarily let Defendant off the hook.

The Third Circuit further elaborated the employer-notice requirement in Conneen v. MBNA America Bank, N.A.:

> The law does not require any formal mechanism or
> "magic words," to notify an employer such as MBNA that
> an employee needs an accommodation. Taylor, 184 F.3d
> at 313. Moreover, as the court noted in Bultemeyer v.
> Fort Wayne Cmty. Sch., 100 F.3d 1281, 1285 (7th Cir.
> 1996), circumstances will sometimes require "[t]he
> employer . . . to meet the employee half-way, and if
> it appears that the employee may need an accommodation
> but doesn't know how to ask for it, the employer
> should do what it can to help." However, either by

> direct communication or other appropriate means, the
> employee "must make clear that the [he/she] wants
> assistance for his or her disability." <u>Jones v. United
> Parcel Serv.</u>, 214 F.3d 402, 408 (3d Cir. 2000). The
> employer must have enough information to know of "both
> the disability and desire for an accommodation,"
> <u>Taylor</u>, 184 F.3d at 313, <u>or circumstances must at
> least be sufficient to cause a reasonable employer to
> make appropriate inquiries about the possible need for
> an accommodation.</u>

334 F.3d 318, 332 (3d Cir. 2003) (emphasis added). This guidance

makes it clear that the inquiry does not stop with the fact that

Plaintiff did not make an explicit request for an accommodation

until twelve days after his termination. Rather, the issue comes

down to whether (1) Defendant knew of Plaintiff's disability and

desire for an accommodation, or whether (2) circumstances were

sufficient to cause a reasonable employer to make appropriate

inquiries about the possible need for an accommodation.

It appears that Defendant was aware of Plaintiff's

disabled condition. In multiple emails prior to his termination,

Plaintiff expressed to Defendant that he had "every intention of

returning to work." Pl.'s Mem. Law Ex. D. And even if, prior to

his termination, Plaintiff never explicitly stated that he

desired accommodation in the form of extended medical leave, at

this stage in the proceedings and in the light most favorable to

Plaintiff, there is a genuine dispute of material fact as to

whether the desire to remain employed which Plaintiff conveyed

to Defendant included an implicit request for some form of

extended leave while he finished recovering. In fact, in an email dated October 22, 2012, Plaintiff asked if he could "appeal and see if [Defendant had] any discretion" in extending the period of his FMLA leave. Id. Accordingly, even if Plaintiff did not make Defendant aware of his desire for an accommodation, the Court finds that Plaintiff has raised a genuine issue of material fact regarding whether the circumstances were "sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." Conneen, 334 F.3d at 332.

Because the facts alleged support the inference that Defendant had notice of Plaintiff's desire and/or need for accommodation, Defendant's duty to participate in the interactive process of identifying a reasonable accommodation was triggered. Defendant's alleged failure to initiate or participate in that interactive process could therefore support Plaintiff's failure-to-accommodate claim. Thus, the Court will deny Defendant's motion for summary judgment as to Count II.


V.   **CONCLUSION**

For the foregoing reasons, the Court will deny the motion for summary judgment. An appropriate order follows.